# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Alison Locke<br>31 Meech Street<br>Buffalo, New York 14209<br><br>        Plaintiff,<br><br>v.<br><br><br>INDEPENDENT HEALTH ASSOCIATION,<br>INC.,<br>511 Farber Lakes Drive<br>Williamsville, New York 14221<br><br>INDEPENDENT HEALTH BENEFITS<br>CORPORATION, INC.,<br>511 Farber Lakes Drive<br>Williamsville, New York 14221<br><br><br>YWCA Western New York, Inc.<br>1005 Grant Street # C<br>Buffalo New York 14207<br><br>        Defendants. | **VERIFIED COMPLAINT**<br>**AND JURY DEMAND**<br><br>Civil Action No. 1:20-cv-1891 |

Plaintiff, ALISON LOCKE ("Plaintiff") by her attorneys, Rupp Baase Pfalzgraf Cunningham LLC, as and for her verified complaint against Defendants, INDEPENDENT HEALTH ASSOCIATION, INC., INDEPENDENT HEALTH BENEFITS CORPORATION, INC. and YWCA Western New York, Inc. ("YWCA"), (collectively referred to herein as "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

1.     This civil action arises from false, fraudulent and bad faith determinations of Plaintiff's health care claims made by Defendants resulting in the denial of statutorily mandated

health care benefits purchased by Plaintiff, a participant in the POS/HMO FlexFit Platinum with Pediatric Dental Plan ("FlexFit" or "Plan") sponsored and administered by Defendants.

2.      Defendants' denials of claims for home birth and midwife services provided to Plaintiff by Maura Winkler CNM and Fika Midwifery PLLC were made in bad faith and in breach of Plaintiff's contractual rights and Defendants' obligations under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. 1001 *et. seq.,* New York State Public Health Law, Insurance Law and General Business Law.

## JURISDICTION AND VENUE

3.      Pursuant to 29 U.S.C. 1132(e)(1) and ERISA § 502 (e)(1)(2), United States District Court for the Western District of New York has exclusive jurisdiction over this civil action which is brought by a participant in an ERISA benefit plan to recover benefits due to her and enforce the rights under the terms of her plan in accordance with 29 U.S.C. 1132 (a)(1)(B) and ERISA § 502 (a).  All related state law claims are brought pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).

## PARTIES

4.      At all times relevant to this action, Plaintiff was and is a resident of Erie County, New York, an employee of YWCA, a participant pursuant to 29 U.S.C. § 1002 (2) (B) (7) of an employee benefits plan and a member of the FlexFit Plan.

5.      Defendant Independent Health Association, Inc. ("IHA") at all times relevant herein, was and is a New York not for profit corporation with its principal place of business at 511 Farber Lakes Drive, Williamsville, New York 14221. It is a health maintenance organization ("HMO") formed pursuant to Article 44 of the New York Public Health Law for the

purpose of providing a comprehensive health services plan, including midwife services, to an enrolled population.

6.     Defendant Independent Health Benefits Corporation, Inc. ("IHBC") at all times relevant herein, was and is a New York not for profit corporation with its principal place of business at 511 Farber Lakes Drive, Williamsville, New York 14221. It is organized pursuant to Article 43 of the Insurance Law for the purpose of furnishing medical, hospital service and dental expense indemnity to persons who become insured under contracts with such corporations.

7.     Defendant YWCA at all times relevant herein, was and is a New York not for profit corporation with its principal place of business at 1005 Grant Street # C, Buffalo New York 14207.

8.     That YWCA sponsored Plaintiff's FlexFit family Plan and was and is the Plan's fiduciary whose primary responsibility is to run the Plan solely in the interest of participants and beneficiaries and for the exclusive purpose of providing benefits and paying expenses of the Plan.

9.     Upon information and belief, YWCA delegated its fiduciary duties to IHA and IHBC.

10.     IHA was the sole member of IHBC in 2019 and continues to have complete and effective control of IHBC which is a controlled corporation.

11.     IHA personnel operate IHBC and IHA policies and procedures applied to IHBC operations in 2019 and up to the present time.

## STATEMENT OF FACTS

### IHA's "FlexFit Plan"

12.     Through the course of and as a benefit of her employment with YWCA Buffalo, Plaintiff acquired family medical coverage under the FlexFit Plan, which is sponsored, managed and administrated by Defendants.  The FlexFit Plan is both an HMO and an indemnity policy under which Defendants were contractually obligated to cover the cost of Plaintiff's and her family's health benefits pursuant to plan documents.

13.     That at all times relevant herein Plaintiff complied with the terms and conditions of her FlexFit Plan and did not breach any term or condition of said Plan which is a contract between her and the Defendants.

14.     In 2018 Plaintiff became pregnant, and in reliance on her medical and hospital coverage under the FlexFit Plan, she engaged the services of licensed midwife, Maura Winkler, CNM, and Fika Midwifery (collectively "FIKA") in connection with prenatal care, home birth, postnatal care and newborn care.

15.     FIKA, one of the state's larger midwifery practices, is the only independent midwifery practice in the Buffalo region that assists births at the patient's home or at another setting of the patient's choosing.

16.     The demand for home birthing centers has grown exponentially in recent years and intensified with the onset of the 2020 Covid-19 pandemic with more families choosing to give birth out-of-hospital and turning to licensed midwives for independent provision of care during pregnancy, childbirth and the postpartum period. A certified nurse midwife (CNM) has both a nursing degree and a midwife license issued by the State of New York.

17.     In response New York State Governor Andrew Cuomo created a Covid-19 Maternity Task Force in an effort to diversify birthing site options and support patient choice. As a result, the State Department of Health will now certify midwife-owned and managed birthing centers as Article 28 Health Care Facilities in New York State.  Article 28 is the same law under which hospitals are certified to operate.

18.     In connection with Task Force initiatives, Melissa DeRosa, Secretary to the Governor and Chair of the New York State Covid-19 Maternity Task Force, stated: "By adding midwife-led birthing centers to state health department oversight, we are recognizing their vital role as safe and healthy birthing options and continuing to expand patient choice for expecting mothers."

19.     Previously, birthing-center licensure was permitted only for physician-owned sites and hospitals. Midwives, who must be licensed through the New York State Office of Professions, have been asking for additional licensure since the passage of the Midwifery Modernization Act ten years ago, which gave midwives expanded ability to practice without having written agreements with physicians.

20.     FIKA, the only area midwifery that has achieved the Triple Aim Achievement and Four Core Best Practice Designation from the American College of Nurse Midwives, was the first midwifery practice in the state to file for licensure as a birthing center.

21.     At all times relevant to this complaint, Maura Winkler, CNM possessed a valid New York State license to practice as a midwife.

22.     At all times relevant to this complaint, FIKA was not a participating provider under the FlexFit Plan sponsored, managed and administrated by Defendants.

23.     Under the New York State Public Health Law, members of an HMO and members of an indemnity Plan such as the Plaintiff have the right to obtain midwife services from a non-participating provider when the HMO or the indemnity insurer does not offer the services of a midwife who is geographically accessible and possesses the training and experience to assist a home birth.

24.     Upon information and belief, at all times relevant to this complaint FIKA was and is the only midwifery that provides home birth services in the Buffalo, New York region.

25.     Upon information and belief, at all times relevant to this complaint there were, and still are, no midwives or physicians in Defendants' networks who are equipped and willing; and have the training and experience to assist a home birth as required by the Public Health Law.

26.     Upon information and belief, prior to Plaintiff's pregnancy, Defendants IHA and IHBC routinely processed and paid out of network claims for home births and midwife services submitted by FIKA.

### IHA's Coverage Authorizations

27.     Because FIKA was not a participating provider under Plaintiff's HMO, FIKA sought and received out of network coverage in connection with its services on Plaintiff's behalf.  Included in the coverage request were the codes describing the services to be provided by FIKA in connection with Plaintiff's treatment, including prenatal care, home birth, postnatal care and newborn services.

28.     On or about February 14, 2019, IHA issued a notice of coverage authorization (2019214A14639) to Plaintiff with a copy to FIKA.  It authorized ***"[i]n network***

***coverage for out of plan referral to Maura Winkler, CNM for prenatal care."*** (Emphasis

added). The applicable dates were from 02/11/2019 to 03/22/2019. Attached hereto as <u>Exhibit</u>

<u>A</u> is the notice of coverage authorization issued by IHA.

29.    On or about March 29, 2019, IHA issued a subsequent notice of coverage

authorization (20190329A10023) to Plaintiff and FIKA, approving further FIKA services in

connection with Plaintiff's pregnancy and delivery from 03/26/2019 through 05/24/2019. It

authorized "***[i]n network coverage for out of plan referral for home birth from Maura Winkler***

***CNM. Approved to 41 weeks 5/24/2019."*** (Emphasis added). Attached hereto as <u>Exhibit B</u> is the

subsequent notice of coverage authorization issued by IHA.

30.    Both notices ("Notices") constitute documentary evidence of Defendants'

acknowledgement of and agreement to their contractual obligation to pay for Plaintiff's midwife

services in the same manner and with the same benefits as if provided by a participating

provider.

31.    Said "authorization" is the administrative process which Defendants

follow to pay for covered health benefits that must be provided to the Plaintiff by an out of

network provider.

32.    That on May 14, 2019 the Plaintiff gave birth to her son M.L. with the

assistance of Maura Winkler CNM in a setting of her choice. That Plaintiff's labor was longer

than expected requiring 32.5 hours of prolonged labor support from May 12 to May 14 when

M.L. was born.

33.    That all services received by Plaintiff in connection her pregnancy and

delivery and M.L.'s birth were provided within the applicable dates set forth in the Notices. See,

Exhibits A and B.

34.     That Plaintiff's FlexFit Plan was a family plan which by its terms obligated Defendants to cover and pay for services to M.L. in utero and upon birth.

35.     That in May 2019 Plaintiff received an explanation of benefits ("EOB") from IHA dated May 03, 2019 denying two claims for immunization service provided on March 27, 2019 by Maura Winkler CNM. The services were provided within the authorization period. See, Exhibit B. The reason given was **"[c]ontractual denial. This service is not covered by your plan."** Attached hereto as Exhibit C is the May 3, 2019 EOB issued by IHA.

36.     Contrary to what was stated, immunizations are a FlexFit Plan benefit. This EOB was null and void as an adverse benefit determination because it was not factual and did not comply with the requirements of 29 C.F.R § 2560.503-1 *et seq.*. because it was months late and did not contain the requisite information. See, Exhibit C.

37.     In May 2019 Plaintiff received a second EOB dated May 17, 2019 indicating that Defendants had paid a claim submitted with a date of service of April 23, 2019. The claim was related to Plaintiff's pregnancy and delivery. Attached hereto as Exhibit D is the May 17, 2019 EOB issued by IHA. Beginning in June of 2019 after Plaintiff's delivery and without notice or explanation as required by law, Defendants sent Plaintiff multiple EOBs denying or partially paying Plaintiff's claims leaving Plaintiff with a substantial balance owed to FIKA.  Attached hereto as Exhibit E are the additional EOBs issued by IHA.

38.     According to some EOBs, Defendants even retracted payments from claims that were previously paid. Most of the EOBs contained the explanation: **"Contractual denial. This service is not covered by your plan."** See, Exhibit E.  The explanation was not factual, was misleading and in violation of 29 C.F.R § 2560.503-1 *et seq.* because services related to pregnancy and delivery were Plan benefits.

39.     In August 2019 Plaintiff had a phone conversation with an IHA benefit administration representative. Upon information and belief that individual, in a notation, treated Plaintiff's inquiry as an appeal of the EOBs for herself and M.L. Plaintiff did not receive a full and fair appeal because Defendant's claims and appeal procedures did not comply with 29 C. F. R. § 2560.503–1(b) & (h).

40.     In September 2019 Plaintiff received two notices of adverse benefit determination decisions ("Decisions"), one for her and the other for M.L., both dated September 12, 2019. Attached hereto as Exhibit F are the September 12, 2019 decisions.

41.     Although Plaintiff appealed the denial of all of her denied and partially paid claims related to her pregnancy and delivery, IHA's Decisions focused on only two of her claims. No explanation was given for the failure to include the other claims in the appeal. In the Decision, Defendants state the "**Reason for Denial (in whole or in part)**" is **"Contract limitations."** See, Exhibit F.

42.     Incredibly after reciting the history of Plaintiff's authorizations and stating the applicable authorization periods (February 11, 2019 through March 22, 2019 and March 26, 2019 to May 24, 2019), the Decisions claim that the dates of service of March 27, 2019 and May 15, 2019  **"… are outside the dates and services authorized in previously approved authorizations."**  Id.

43.     The falsity of Defendant's statement is apparent, as the March 27, 2019 and May 15, 2019 dates of service are well within Defendant's second authorization period. See, Exhibit B.  Thus, Defendant's Decisions were null and void by their own terms.

44.     The Decision concerning M.L.'s claims was not factual and does not cite a provision or term of the FlexFit plan for authority. There is no term or condition of the FlexFit

Plan that requires a newborn or his parents or his midwife to obtain "prior authorization" for newborn services. Newborn services are a Plan benefit. M.L. needed resuscitation, his care was urgent or emergent and did not require prior authorization.

45.     The statement that **"Since prior authorization was not on file for these services, Independent health is unable to provide benefit coverage for the services provided by Maura Winkler, CNM on May 14 -15 2019 and May 19, 2019"** was a flagrant dereliction of Defendant's fiduciary duty to M.L. See, Exhibit G (Emphasis added).

46.     In the last paragraph of both Decisions is a discussion of Maura Winkler's compliance with her midwife licensure. To Plaintiff's recollection this was the first time Defendants alleged this reason for denying or partially paying Plaintiff's claims.

47.     This reason was not stated in any of the EOBs Plaintiff received. At no time was Plaintiff made aware by Defendants that their issue with a provider could result in Plaintiff becoming personally liable for her midwife's claims. At no time did Defendants show Plaintiff a term or provision of the FlexFit Plan that would give them the right to deny Plaintiff's claims after the services were provided and when Plaintiff could no longer obtain covered midwife services.

48.     At all times relevant herein Plaintiff and her son have complied with all of the terms and conditions of her FlexFit Plan and have not violated or breached any term or condition thereof.

49.     As a direct result of Defendant's false, fraudulent and illegal actions complained of herein, Plaintiff became personally liable to pay FIKA the sum of $10,823.28. See, September 10, 2019 invoice attached hereto as Exhibit H.

50.     In November of 2019 after denying Plaintiff's appeal, Defendants made a partial payment to FIKA in the amount of $7,119.00. The payment constitutes an admission (despite denials to the contrary) of IHA's obligation to pay Plaintiff's and M.L.'s claims under the FlexFit Plan. See, Exhibit I attached.

51.     As a result of Defendants partial payment, Plaintiff's liability to FIKA was reduced to $6,675.00. See, December 23, 2019 invoice attached hereto as Exhibit J.

52.     On February 6, 2020 Plaintiff timely submitted a appeal of all the adverse benefit determinations she received to date. The appeal was filed on her behalf by her husband Simon Locke and was received by Defendants on February 13, 2020.

53.     In flagrant dereliction of their fiduciary duty to Plaintiff, Defendants ignored Plaintiff's appeal and have done so through the date of this complaint.

54.     Defendants denial of or partial payment of Plaintiff's claims for maternity benefits was and is in direct violation of section 4403 of the New York State Public Health Law and section 4303 of the New York State Insurance Law which requires every contract issued by an HMO or insurer to provide coverage for maternity care including the services of a licensed midwife.

55.     To date, Defendants have refused to pay the above balances for services provided to Plaintiff previously authorized and even partially paid (and then retracted) pursuant to IHA's duly issued authorizations of coverage.

**Defendants' Fiduciary Duty**

56.     Pursuant to ERISA § 502 (a) (1) (B), 29 U.S.C. § 1132 (a) (1) (B), Plaintiff, as a beneficiary under the FlexFit Plan, is entitled to bring a civil action to recover

benefits due to her under the terms of the Plan, to enforce her rights under such Plan, and/or to

clarify her rights to future benefits under the terms of the Plan.

57.    As fiduciary of the FlexFit Plan, the basic duty of the Defendants is for the

exclusive purpose of providing benefits to participants, especially the Plaintiff.

- to use the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matter, would use in the conduct of an enterprise of a like character and with like aims;

- to ensure compliance with the FlexFit Plan in accordance with the ERISA consistent documents and instruments governing the plan.

58.    Specifically, Defendants owed duties to Plaintiff to perform (and/or ensure

the performance) to:

- properly interpret the terms of the FlexFit Plan and federal law;
- provide FlexFit Plan benefits to Plaintiff;
- provide a reasonable basis in writing to Plaintiff for its failure to provide benefits;
- provide Plaintiff a copy of relevant information and documents regarding its failure to provide benefits;
- inform Plaintiff of a means of appeal of its failure to provide benefits as required by the plan and federal law;
- provide Plaintiff with a "full and fair" review;
- review and investigate Plaintiff's claim in good faith;
- comply in good faith with the ERISA Statutes, the ERISA regulations and the Plan regarding the proper administration of Plaintiff's claims.
- establish and maintain a procedure by which Plaintiff shall have a reasonable opportunity to appeal an adverse benefit determination and under which Plaintiff's claim and adverse benefit determination shall have a "full and fair" review.

C.F.R. 2560.503-1 (h)

59.    Defendants' decisions illegally deprived Plaintiff of her FlexFit Plan

benefits, denied Plaintiff relevant information and documentation related to Defendant's failure

to provide benefits, failed to review and investigate Plaintiff's claims in good faith, and denied

Plaintiff her right to a "full and fair" review of Defendant's adverse benefit determinations.

**Failure to Provide Documents**

60.     Despite numerous requests, Plaintiff was not provided with relevant information and documents repeatedly requested by Plaintiff under ERISA.

61.     Pursuant to 29 C.F.R. 2560.503-1(h), the claims procedures of a plan "will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures…[p]rovide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits."

62.     A document, record, or other information shall be considered "relevant" to a claim if such document, record, or other information:

(i)     Was relied upon in making the benefit determination;

(ii)    Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; or

(iii)   Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination.

63.     On May 22, 2020, Plaintiff requested through counsel "the entire administrative record" relevant to her claims "which shall include all information available to the claim administrator in its initial benefit determination and any subsequent review upon appeal." Attached hereto as Exhibit M is the May 22, 2020 demand to IHA, which included a non-exhaustive list of information and documentation sought.

64.     On or about June 11, 2020, IHA transmitted what it deemed its "Confidential file re Alison Locke" to Plaintiff's counsel.

65.     However, Defendants' disclosure omitted information and documentation relevant to Plaintiff's claim previously requested in the May 22, 2020 demand, including:

(a)     all information relied upon and names of individuals who investigated, contributed to and/or approved IH's position (including UM employee "Louise") including steps taken by IH to verify proof of Fika's collaborative relationships;

(b)     All reviews and determinations made by Timothy Haley MD concerning Maura Winkler CNM and all of his communications concerning Maura Winkler CNM;

(c)     copies of all policy provisions that support the denials;

(d)     copies of all coverage documents;

(e)     recordings of all conversations pertaining to Plaintiff's claims, including IH's investigation and determination regarding proof of Maura Winkler/Fika's collaborative relationships;

(f)     any IH memoranda, policies or guidelines that inform the meaning or application of any relevant policy limitations.

66.     On July 28, 2020, Plaintiff's counsel reiterated its demand for Plaintiff's claim documents, to which IHA failed to respond.  Attached hereto as <u>Exhibit N</u> is the July 28, 2020 correspondence.

67.     Plaintiff was entitled to know what evidence IHA relied upon to deny her claims and by failing to provide the requested documents Defendants have deprived Plaintiff of sufficient information to prepare adequately for an appeal to this Court in violation of ERISA and in bad faith.

## **FIRST CAUSE OF ACTION**
### **(Violations of ERISA § 1132(a)(1)(B) Benefit Claims)**

68.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 67 of this Complaint, with the same force and effect as if set forth here at length.

69.     Pursuant to ERISA § 502 (a) (1) (B), 29 U.S.C. § 1132 (a) (1) (B), Plaintiff, as a beneficiary under the Plan, is entitled to bring a civil action to recover benefits due

to her under the terms of the Plan, to enforce her rights under such plan, and/or to clarify her rights to future benefits under the terms of the Plan.

70.     Defendants have violated ERISA, 29 U.S.C. § 1001 et seq., 29 CFR 2560 et seq, and the provisions of the Plan under its plain language by refusing to provide Plaintiff with benefits she is entitled to under the FlexFit Plan.

71.     Defendants' wrongful denial of coverage was a result of Defendants' improper, arbitrary and irrational application of the terms of the FlexFit Plan, which denied Plaintiff the health benefits that she purchased in good faith.

72.     Plaintiff and her son are entitled to the full amount of health benefits provided under the FlexFit Plan since Plaintiff has met all of the definitions, criteria, and requirements thereof.

73.     Defendants' improper, arbitrary and irrational disregard of the governing laws and regulations denied Plaintiff from obtaining a "full and fair" review of her claims.

74.     Defendants have denied meaningful access to the review process to resolve her claims.

75.     Defendants decisions denying or ignoring Plaintiff's appeals were improperly motivated and operated under a conflict of interest arising from Defendants' breach of fiduciary and administrative duties to Plaintiff and adherence to internal policies designed and intended to mask liability for their breaches of fiduciary duty to Plaintiff.

76.     Defendants have intentionally withheld relevant plan documentation and information regarding their decisions in direct violation of the governing regulations.

77.     As result of defendants' abuse of discretion, acts of bad faith, violations of the FlexFit Plan, ERISA regulations, and ERISA statutes, Plaintiff is entitled to

reversal of Defendants' illegal, arbitrary and bad faith denials, and immediate payment of all past due health claims as originally submitted subject only to applicable copays, deductibles and partial payments with interest thereon at the highest rate allowed by law.

## SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty)

78.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 77.

79.     As fiduciary of the FlexFit Plan, Defendants owed Plaintiff a fiduciary duty to perform their administrative duties with the utmost loyalty to Plaintiff and solely in her best interest and in compliance with the FlexFit Plan.

80.     Defendants breached their duty to Plaintiff by misinterpreting and misapplying the terms of the FlexFit Plan and failing to protect the interest of Plaintiff, a plan beneficiary.

81.     Defendants breached their duty to Plaintiff by withholding relevant information and documents relating to the adverse benefit determinations required for Plaintiff to pursue her appeal. And more particularly Defendants did not disclose to Plaintiff that their mistaken and unsupported interpretation of Plaintiff's right to midwife services was not the only interpretation that could apply.

82.     Defendants breached their duty to Plaintiff by failing to provide Plaintiff with a "full and fair" hearing and a complete and just determinations of her claims.

83.     Defendants breached their fiduciary duty to Plaintiff by making decisions based upon a conflict of interest.

- 16 -

84.     Accordingly, Plaintiff is entitled to relief under state law and/or ERISA § 502 (a) (3), 29 U.S.C. § 1132 (a) (3), 404(a)(1)(A) and (B); 29 U.S.C. § 1104 (a) (1)(A) and (B); 404(a)(1)(D); 29 U.S.C. § 1104 (a) (1)(D).

### THIRD CAUSE OF ACTION
#### (Enforcement of Procedural Requirements)

85.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 84.

86.     Defendants are fiduciaries under ERISA.

87.     As set forth in the preceding paragraphs, Defendants did not provide a reasonable basis for the denial of benefits.

88.     As set forth in the preceding paragraphs, Defendants did not provide for a full and fair review because the review of Plaintiff's appeals was conducted by a disqualified person.

89.     As set forth in the preceding paragraphs, Defendants' denial of benefits was illegal, arbitrary and capricious because they failed to follow the procedural requirements of ERISA.

90.     Accordingly, Plaintiff is entitled to relief under ERISA § 503, 29 U.S.C. § 1133, including but not limited to reversal of Defendants' illegal, arbitrary and bad faith denials and affording Plaintiff a full and fair hearings.

### FOURTH CAUSE OF ACTION
#### (ERISA § 1132 (c) Refusal to Supply Requested Information)

91.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 90.

92.     Plaintiff is a beneficiary under the FlexFit Plan.

- 17 -

93.     Upon information and belief, Defendants are administrators of the FlexFit Plan.

94.     As set forth herein, on numerous occasions, Plaintiff requested of Defendants information and documents relevant to Plaintiff's claims and Defendants denial thereof.

95.     Plaintiff has not yet been provided all of the relevant documents and information requested from Defendants.

96.     Accordingly, Defendants did not respond to Plaintiff's request(s) within 30 days.

97.     Plaintiff is thereby entitled to $100 per day from the date of such failure to provide requested information from the FlexFit Plan administrators.

### FIFTH CAUSE OF ACTION
### (Promissory Estoppel under ERISA § 502(a)(3), Federal Common Law and/or New York State Common Law)

98.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 97 of this Complaint, with the same force and effect as if set forth here at length.

99.     Defendants' duly issued authorizations constituted a promise that Plaintiff was entitled to such coverage and benefits under the FlexFit Plan.

100.     Such promises were clearly and unambiguously stated in IHA's authorizations of coverage.

101.     It was reasonable for Defendants to expect that Plaintiff would rely on those promises.

102.    It was foreseeable by Defendants that Plaintiff would rely on those promises.

103.    Plaintiff did, in fact, rely on such promises, believing that the services provided by FIKA in connection with Plaintiff's home birth would be covered.

104.    Plaintiff, by detrimentally relying on those promises, and desiring continuity of care for her home birth and her son's newborn care, did not procure an alternate provider for her home birth and related services. At no time did Defendants offer alternatives to the care provided by FIKA.

105.    As a result, Plaintiff's claims were denied, partially and some even paid and then retracted, leaving Plaintiff responsible for the cost of care for her and her newborn son.

106.    An injustice will be had if Plaintiff is not provided the benefits that she was promised. Notably, Defendants will be provided a substantial windfall because of their actions.

107.    As set forth in the preceding paragraphs, extraordinary circumstances exist.

108.    Defendants' promises deliberately misrepresented Plaintiff's eligibility to receive benefits, induced her reliance upon Defendants' assurance of coverage, and resulted in damages to Plaintiff when Defendants denied, partially paid and/or retracted her claims, when Plaintiff could no longer do anything about it.

109.    Accordingly, Plaintiff is entitled to relief under the doctrine of Promissory Estoppel in the amount of $6,675.00 plus penalties and interest.

## SIXTH CAUSE OF ACTION
**(Breach of Contract – Violations of Public Health Law Sections 4403 & 4408)**

110.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 109 of this Complaint, with the same force and effect as if set forth here at length.

111.     That pursuant to New York State Public Health Law, members of a HMO such as the Plaintiff must be provided with a referral and authorization to an out-of-network provider when their health plan does not have an in-network provider with the appropriate training and experience to meet their particular health care needs at no additional member cost beyond what they would pay to see an in-network provider.

112.     That pursuant to Public Health Law section 4408 each member who lives in the Buffalo New York region has the right to obtain midwife services from a non-participating provider when Defendants' networks do not have a midwife who is geographically accessible and who has the training and experience to provide midwife services and assist a home birth.

113.     Upon information and belief, at all times relevant to this Complaint Defendants knew or should have known that there were no midwives or physicians in Defendants' networks who possessed the training and experience and were willing to assist a home birth.

114.     Upon information and belief, at all times relevant to this Complaint FIKA did not and does not participate in a network administered by Defendants.

115.     That Plaintiff sought and obtained the midwife and home birth services of FIKA in connection with her pregnancy.

116.     That FIKA sought and obtained coverage authorizations from Defendants for services to be provided to Plaintiff under Defendants' FlexFit Plan.

- 20 -

117.    That after assuring coverage Defendants, without notice, began denying and only partially paying Plaintiff's claims for home birth and midwife services provided by FIKA.

118.    That Defendants' business purpose for denying coverage of home births and midwife services was in fact to discourage or prevent Plaintiff and other plan members from birthing their children assisted by FIKA.

119.    That Defendants' bad faith denial, partial payment and retraction of payments for home birth and midwife services provided to its members, including Plaintiff, effectively forces them to either pay out of pocket or decide against home birth and midwife services.

120.    Defendants' refusal to provide coverage for home birth and midwife services to its members is a violation of the New York State Public Health Law and in breach of its contractual obligations as set forth in their applicable health plans.

121.    By reason of Defendants' illegal, false and fraudulent denial of Plaintiff's claims and denial of coverage of midwife services for many of its members, Defendants have engaged in an illegal and deceptive business practice designed to deprive the community of midwife services at a time, because of the Covid 19 Virus, when healthy pregnant women who are likely to have healthy babies are seeking to avoid hospital deliveries and to have home births where the environment is controlled and they have a personal relationship with their midwife.

122.    Defendants must be estopped from continuing their illegal and deceptive business practices. That only by Defendants IHA and IHBC's payment of punitive damages in the amount five million dollars $5,000,000 (USD) each will this illegal and deceptive business practice that adversely effects the women in the community stop.

## SEVENTH CAUSE OF ACTION
### (Breach of Contract – Violations of Insurance Law Section 4303)

123.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 122 of this Complaint, with the same force and effect as if set forth here at length.

124.    As fully set forth in detail above, New York State Insurance Law requires every contract issued by an HMO or an indemnity company to provide maternity care coverage for services of a midwife licensed pursuant to article one hundred forty of the education law and practicing consistent with section sixty-nine hundred fifty-one of the education law.

125.    As FIKA meets the requirements of section Insurance Law § 4303, Defendants' denial of claims and partial payments of Plaintiff's and her son's claims  is a violation of the New York State Insurance Law and in breach of their contractual obligations as set forth in the FlexFit Plan.

126.    That Defendants' purpose for denying claims for home birth and midwife services was in fact to discourage or prevent Plaintiff and others similarly situated from birthing their children assisted by FIKA.

127.    That Defendants' bad faith and illegal denial of coverage and denial, partial payment and retraction of payments for home birth and midwife services provided to its members, including Plaintiff, effectively forces them to either pay out of pocket or decide against home birth and midwife services.

128.    By reason of Defendants' illegal, false and fraudulent denial of Plaintiff's claims, Plaintiff is entitled to damages in the principal amount of $ 6,675.00, plus all statutory interest pursuant to New York Insurance Law § 3224-a(c)(1) and legal fees and punitive damages.

## EIGHTH CAUSE OF ACTION
### (Breach of Covenant of Good Faith & Fair Dealing)

129.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 128 of this Complaint, with the same force and effect as if set forth here at length.

130.    The FlexFit Plan contains an implied covenant of good faith and fair dealing that mandates Defendants shall do nothing that would prevent Plaintiff from receiving benefits she contracted for thereunder.

131.    Defendants, through their wrongful conduct, including but not limited to the acts described above, prevented Plaintiff from receiving the benefits she contracted for and was entitled to under the FlexFit Plan.

132.    As a direct result of Defendants' breach of the covenant of good faith and fair dealing implied in every contract by and through their administration of the FlexFit Plan, Plaintiff has sustained and continues to sustain damages.

## NINTH CAUSE OF ACTION
### (Violations of General Business Law Section 349)

133.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 132 of this Complaint, with the same force and effect as if set forth here at length.

134.    The foregoing acts constitute deceptive acts and practices under the provisions of Section 349 of the General Business Law harmful to Plaintiff and consumers of Defendants at large.

135.     By reason of the foregoing, the Plaintiff is entitled to damages to be determined by the Court pursuant to section 349(h) together with the award of reasonable attorney's fees.

## TENTH CAUSE OF ACTION
### (Violation of N.Y. Insurance Law § 3224-a)

136.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 135 of this Complaint, with the same force and effect as if set forth here at length.

137.     Section 3224-a of the New York Insurance Law requires Defendants to reimburse Plaintiff for health care services rendered within thirty (30) days of receipt of the claim via electronic means.

138.     When Defendants encounter a claim for which it is not reasonably clear that they are obligated to remit payment, Section 3224-a(b) requires the Defendants to pay the undisputed amount, notify Plaintiff of the specific reasons why they are not liable, and request additional information necessary to determine liability within thirty (30) days.

139.     Defendants have failed to reimburse Plaintiff for valid and undisputed electronic claims within thirty (30) days of the date the claim was submitted in violation of New York Insurance Law § 3224-a.

140.     As a result of Defendants' breach, Defendants are obligated to pay Plaintiff the full amount of claims for services submitted by FIKA that have been due and owing for more than thirty (30) days, plus interest in the amount of 12% per annum from the date Defendants were required to pay such amounts.

## ELEVENTH CAUSE OF ACTION
### (Negligent Misrepresentation)

141.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 140 of this Complaint, with the same force and effect as if set forth here at length.

142.    Defendants had a contractual duty to perform.

143.    Defendants represented to Plaintiff that she was entitled to certain coverage and benefits under the FlexFit Plan.

144.    Plaintiff relied on those representations that included  treatment by FIKA for her home birth and related care.

145.    Defendants negligently misrepresented to Plaintiff that they would pay her claims and then denied them or only partially paid them after the birth of her son, after Fika provided the services and at a time when Plaintiff could not obtain other covered midwife services.

146.    As a direct and proximate result of Defendants' negligent misrepresentations  Plaintiff has become indebted when she should not have been, has had to bring this lawsuit to protect and exercise her ERISA and contract rights, and will have to pay the costs and expenses of this litigation. Plaintiff has unnecessarily had to participate in appeals where her rights to full and fair hearings were denied. That Plaintiff has suffered damages as a result of Defendants negligent misrepresentations in an amount to be determined.

## TWELFTH CAUSE OF ACTION
### (Unjust Enrichment)

147.     Plaintiff repeats and re-alleges each and every allegation contained in

paragraphs 1 through 146 of this Complaint, with the same force and effect as if set forth here at

length.

148.     Defendants have failed to reimburse Plaintiff for the balance of the cost of

health care services rendered by FIKA in the amount of $6,675.00 plus interest pursuant to

Insurance Law section 3442-b.

149.     Additionally, due to Plaintiff's election to have a home birth, Defendants

have saved approximately $18,000 in costs related to the hospitalization and delivery services

that would have been incurred had Plaintiff elected to give birth in a hospital and retaining

150.     Defendants have also unjustly retained premiums paid by or on behalf of

Plaintiff.

151.     Defendants have been unjustly enriched by their refusal to reimburse

Plaintiff for costs incurred in connection with her home birth in the amount of $6,675.00 while

saving $18,000 due to Plaintiff's home birth election.

152.     By reason of the foregoing, Defendants should be ordered to disgorge

twenty-four thousand six hundred seventy-five dollars ($24,675.00 USD)plus unearned premium

income, the amount by which they have been unjustly enriched and pay the same over to

Plaintiff.

## .DEMAND FOR TRIAL BY JURY

1.     Pursuant to the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury in this action.

**WHEREFORE**, Plaintiff ALISON LOCKE respectfully requests that this Court:

(a) Award ALISON LOCKE damages in the amount of approximately $6,675.00 for her claim for benefits under the FlexFit Plan pursuant to ERISA §502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B);

(b) Award ALISON LOCKE prejudgment interest in the amount of 12% per annum on the benefits awarded;

(c) Award ALISON LOCKE all attorney's fees and costs incurred pursuant to ERISA § 502(g), 29 U.S.C. §1132(g);

(d) Award ALISON LOCKE damages in the amount of $ 6,675.00 for her claim for benefits under the doctrine of Promissory Estoppel;

(e) Annul the illegal, arbitrary and bad faith denials of Defendants and order Defendants to undertake such action that is necessarily required to assure payment of the past due and owing benefits to Plaintiff;

(f) Impose a constructive trust in the amount of approximately $24,675.00plus unearned premium income disgorged from Defendants for ALISON LOCKE's benefit;

(g) On All Causes of Action, damages, including punitive damages in the amount of $5,000,000 and attorneys fees; and

(h) Award ALISON LOCKE such other and further relief as this Court may be deemed just, equitable and proper.

\

Dated:   December 22, 2020
         Buffalo, New York

**RUPP BAASE PFALZGRAF
CUNNINGHAM LLC**
Attorneys for Plaintiff


By:   /s/ *Elizabeth A. Holmes*

Elizabeth A. Holmes, Esq.
Frederick B. Cohen, Esq.
1600 Liberty Building
Buffalo, New York  14202
(716) 854-340

**VERIFICATION**

STATE OF NEW YORK )
                        : ss.:
COUNTY OF ERIE       )

            ALISON LOCKE, being duly sworn deposes and says:

            I am the plaintiff in the above-captioned action.  I have read the foregoing

verified complaint and know its contents.  The document is true to my own knowledge,

except as to matters stated to be on information and belief, and as to those matters, I

believe them to be true.

                                 _____
                                 ALISON LOCKE

Sworn to before me this
17th day of December, 2020.

_____
Notary Public

**RICKY P. LUTHRA**
**NOTARY PUBLIC**
**STATE OF NEW YORK**
**Qualified in Erie County**
**My Commission Expires 8/25/22**